23CA1547 Peo v Kelly 07-16-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA1547
Jefferson County District Court No. 22CR1545
Honorable Meegan A. Miloud, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Earl Richard Kelly,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE PAWAR
Sullivan and Meirink, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 16, 2026

Philip J. Weiser, Attorney General, Carmen Moraleda, Senior Assistant
Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Kevin M. Whitfield, Deputy
State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, Earl Richard Kelly, appeals the judgment of conviction entered after a jury found him guilty of second degree burglary and theft.  We affirm.

## I.     Background

¶ 2     Kelly drove an acquaintance, Lindsey Pruitt, to a storage facility where Pruitt rented two units adjacent to a unit rented by the victims, Andrea Burns and Michael Scally.  On the day that Kelly drove to the storage facility, the victims noticed that the lock to their unit was not working properly and that they were missing property, including Scally's valuable comic book collection.

¶ 3     An investigation revealed that the wire ceiling between the victims' and Pruitt's units was cut and that the bolt to the victims' unit was removed from the inside.  Surveillance footage showed Kelly carrying a bin that looked like a bin that belonged to the victims.  A bin of DVDs and bin lids consistent with what the victims described was also found in Pruitt's unit.

¶ 4     The prosecution charged Kelly with second degree burglary and theft.

¶ 5     Trial was initially set for June 14, but the trial court granted the prosecution's motion for a continuance because Burns planned to be in Japan through the end of the month.

¶ 6     Trial proceeded on July 19.  At the close of the prosecution's evidence, defense counsel moved for a judgment of acquittal, arguing there was no evidence that the storage unit was a "building," as required for second degree burglary.  The trial court denied the motion.

¶ 7     Defense counsel also requested a jury instruction on third degree burglary as either a lesser included or a lesser nonincluded offense of second degree burglary, arguing that the storage unit was a "vault" under the statute for that offense.  The trial court declined to give the requested instructions.

¶ 8     The jury found Kelly guilty as charged, and the court sentenced him to six years in prison.

¶ 9     Kelly appeals, arguing that the court violated his statutory and constitutional speedy trial rights and erroneously denied his requested jury instructions.  He further challenges the sufficiency of the evidence that the storage unit was a building.  We disagree with these arguments and affirm.

## II. Statutory Speedy Trial

### A. Applicable Law

¶ 10    Section 18-1-405(1), C.R.S. 2025, provides that if a defendant is not brought to trial within six months from the date that he enters a not guilty plea, the charges must generally be dismissed. *See People v. Jompp*, 2018 COA 128, ¶ 21.  However, a delay of up to six months is excluded from the computation of that time when the prosecution demonstrates that (1) material evidence is unavailable; (2) it has exercised due diligence to obtain the evidence; and (3) there are reasonable grounds to believe the evidence will be available at a later date.  § 18-1-405(6)(g)(I).  The prosecution must make a sufficient record that these three elements have been met, and the trial court may rely on the prosecution's uncontested offers of proof.  *Jompp*, ¶ 22.

¶ 11    We review a trial court's decision to apply the exclusion in section 18-1-405(6)(g)(I) for an abuse of discretion and will not disturb its findings if they are supported by the record.  *Id.* at ¶ 15.

### B. Discussion

¶ 12    The trial court continued trial under section 18-1-405(6)(g)(I) due to Burns' preplanned vacation to Japan.  Kelly argues that the

court erred because Burns' vacation did not make her "unavailable" and that the prosecution failed to exercise due diligence to obtain her testimony.[1]  We are not persuaded.

¶ 13     First, as to availability, Kelly points to out-of-state decisions concluding that a person is not unavailable for speedy trial purposes if they are on vacation.  *See, e.g., Baustert v. Superior Ct.*, 29 Cal. Rptr. 3d 208, 213 (Ct. App. 2005).  But our supreme court has held that evidence is "unavailable" for purposes of section 18-1-405(6)(g)(I) whenever the prosecution cannot get or use it, "regardless of the reason for such unavailability."  *People v. Lucy*, 2020 CO 68, ¶¶ 30-31.  And other state courts have held that a vacation *can* render a witness unavailable for speedy trial purposes. *See State v. Saffell*, 518 N.E.2d 934, 935 (Ohio 1988) (per curiam); *State v. Grilley*, 840 P.2d 903, 904-05 (Wash. Ct. App. 1992).  Because these decisions demonstrate that reasonable minds may disagree, we conclude the trial court's decision fell within the range of reasonable options.  *See Vigil v. People*, 2019 CO 105, ¶ 14

---

[1] Kelly does not challenge the court's findings as to the third statutory factor — that there were reasonable grounds to believe the evidence would be available later.

4

(we must affirm under these circumstances). Accordingly, the court did not abuse its discretion.

¶ 14 Second, Kelly argues the prosecution failed to exercise due diligence because, while it subpoenaed Burns for trial, it did not enforce that subpoena. Critically, however, there is no requirement to subpoena friendly witnesses in the first place. *See People v. Scialabba*, 55 P.3d 207, 209 (Colo. App. 2002) (no error in continuing trial based on an unavailable witness, despite absence of a subpoena). Here, the prosecutor issued a subpoena for Burns, going above and beyond her due diligence requirement. Once she did so, she discovered that Burns would be unavailable — a finding supported by the record, as discussed above. We conclude that nothing further was required.

¶ 15 Moreover, nothing in the record suggests that the prosecution released Burns from the subpoena before the trial court granted a continuance. *See People v. Conley*, 804 P.2d 240, 246 (Colo. App. 1990) (there is no basis to issue a warrant for a witness where a subpoena is no longer valid). It is therefore just as likely that Burns was released from the subpoena by the continuance itself than by the prosecutor's choice to release her.

¶ 16    Kelly further argues that the prosecutor failed to demonstrate that Burns could not reschedule her vacation or explain why the vacation took precedence over trial.  But the trial court was entitled to weigh and credit the prosecutor's representation that international travel arrangements are generally nonrefundable.  We therefore see no basis for reversal.

### III.    Constitutional Speedy Trial

¶ 17    A defendant also has a constitutional speedy trial right under the United States and Colorado Constitutions.  *Jompp*, ¶ 28 (the analysis of whether this right was violated differs from the analysis regarding the statutory right).  Compliance with the constitutional speedy trial right is determined by considering four factors: (1) the length of the delay; (2) the reasons for the delay; (3) the defendant's assertion of the right; and (4) the prejudice to the defendant resulting from the delay.  *Id.* (citing *Barker v. Wingo*, 407 U.S. 514 (1972)).  We review whether there was a constitutional speedy trial violation de novo, but we defer to the court's factual findings if they are supported by the record.  *People v. Glaser*, 250 P.3d 632, 636 (Colo. App. 2010).

¶ 18    Applying the *Barker* factors, we conclude that the trial court

did not violate Kelly's constitutional right to a speedy trial.

¶ 19    First, the delay was around thirteen months.  While a delay of

over a year is presumptively prejudicial, this delay is "by no means

extreme."  *Jompp*, ¶ 30 (quoting *People v. Nelson*, 2014 COA 165,

¶ 33) (even a three-year delay was not so extreme as to result in a

constitutional violation).

¶ 20    Second, while the delay was attributable to the prosecution, it

was justified because a material witness was unavailable.  *See id.* at

¶ 31 (a missing witness justifies an appropriate delay).  Moreover,

as explained by the prosecutor, Burns' unavailability also prevented

Scally from testifying because he was on the autism spectrum and

Burns was concerned that requiring him to testify without her

present would put an undue toll on his mental health.  Kelly

reiterates his prior arguments that Burns' vacation was not a

justifiable cause for delay.  But as discussed, we may not disturb

the trial court's proper exercise of discretion in this regard.

¶ 21    Third, Kelly asserted his speedy trial rights.

¶ 22    Finally, the *Barker* Court identified three interests to consider

in assessing prejudice: (1) preventing oppressive pretrial

incarceration; (2) minimizing the accused's anxiety and concern; and (3) limiting the possibility the defense will be impaired. *Jompp*, ¶ 33 (of these, the last is most serious). Kelly asserts he was prejudiced because he was incarcerated for the entire duration of the pretrial delay, and his incarceration impacted his employment and income. But his employment-related argument is conclusory, and he makes no argument whatsoever regarding his other interests. In fact, Kelly makes no attempt to demonstrate that his ability to present a defense was impaired in any way. Under these circumstances, the fact that he was incarcerated "is given slight weight." *Id.* (citation omitted).

¶ 23 Although Kelly asserted his speedy trial rights and experienced some prejudice from being incarcerated before trial, we conclude that, when considered as a whole, the *Barker* factors weigh against finding a constitutional violation. Accordingly, Kelly is not entitled to relief.

## IV. Jury Instructions

¶ 24 Next, Kelly asserts the trial court erred by denying his request to instruct the jury on third degree burglary as either a lesser

included or a lesser nonincluded offense of second degree burglary. We discern no error.

### A. Lesser Included Offense Instruction

¶ 25 "[A]n offense is a lesser included offense of another offense if the elements of the lesser offense are a subset of the elements of the greater offense, such that the lesser offense contains only elements that are also included in the elements of the greater offense." *Reyna-Abarca v. People*, 2017 CO 15, ¶¶ 64, 69 (this is the proper articulation of "the strict elements test").

¶ 26 Both second and third degree burglary require unlawful presence in a particular type of place. The question here is whether the places described in the third degree burglary statute are a subset of the places described in the second degree burglary statute. We conclude they are not.

¶ 27 The places to which second degree burglary applies are "building[s] or occupied structure[s]" — a building being "a structure which has the capacity to contain, and is designed for the shelter of, man, animals, or property." § 18-4-203(1), C.R.S. 2025; § 18-4-101(1), C.R.S. 2025.

¶ 28     The places to which third degree burglary applies are "any vault, safe, cash register, coin vending machine, product dispenser, money depository, safety deposit box, coin telephone, coin box, or other apparatus or equipment whether or not coin operated." § 18-4-204(1), C.R.S. 2025.  Whether a place fits this description "depends on whether the apparatus or equipment is merely a storage receptacle or . . . is designed for the safekeeping of money or valuables, and whether that design or use is evident."  *Winter v. People*, 126 P.3d 192, 195 (Colo. 2006).

¶ 29     Based on these definitions, we conclude that not all apparatuses and equipment that would suffice for third degree burglary would also qualify as buildings or occupied structures for second degree burglary.  A cash register suffices for third degree burglary.  § 18-4-204.  But it is certainly not a building or occupied structure for purposes of second degree burglary, even under the legislature's broad definition of "building."  Thus, the elements of third degree burglary are not subsumed by the elements of second degree burglary.  Accordingly, third degree burglary is not a lesser included offense of second degree burglary, and the court properly declined to give the requested instruction.

## B. Lesser Nonincluded Offense Instruction

¶ 30 Nor was Kelly entitled to an instruction on third degree burglary as a lesser nonincluded offense. Such an instruction is warranted only where there is "a rational basis in the evidence to support a verdict acquitting the defendant of a greater offense and convicting him of the lesser offense." *People v. Lopez*, 2020 COA 119, ¶ 9 (quoting *People v. Wartena*, 2012 COA 12, ¶ 30). We see no basis in the evidence here to support acquitting Kelly of the greater offense but convicting him of the lesser offense.

¶ 31 As discussed, the difference between second and third degree burglary is that second degree burglary involves breaking or entering a building or occupied structure. § 18-4-203(1). And a building is statutorily defined as "a structure which has the capacity to contain, and is designed for the shelter of, man, animals, or property." § 18-4-101(1).

¶ 32 There is no question that a storage unit is a structure that has the capacity to contain and is designed for the shelter of property. It therefore falls squarely within the legislative definition of a "building."

11

¶ 33    Kelly argues the evidence supported a finding by the jury that the storage unit was designed for the safekeeping of money or valuables and therefore fell under the purview of section 18-4-204. At the outset, we are not convinced that it had "readily ascertainable features," similar to the other items enumerated in section 18-4-204, so as to make that design evident. *Winter*, 126 P.3d at 195-96 (even a locker is not sufficiently "vault-like" to meet this definition).

¶ 34    But in any event, even if we assume without deciding that there was evidence in the record to support a conviction for third degree burglary, we see no basis for the jury to simultaneously acquit Kelly of second degree burglary. *See People v. Naranjo*, 2017 CO 87, ¶ 17 (noting that a jury's consideration of a lesser nonincluded offense can subject the defendant to an additional conviction and ultimately harsher punishment). A storage unit meets the legislative definition of a building — a structure with the capacity to contain and designed to shelter property. Accordingly, because we conclude there is no rational basis in the evidence to support acquitting Kelly of the greater offense while also convicting

him of the lesser offense, the court was not required to provide the lesser offense instruction.

V.     Sufficient Evidence Supported the Burglary Conviction

¶ 35     Finally, as demonstrated by the discussion above, we disagree with Kelly's argument that the prosecution presented insufficient evidence to prove that the storage unit was a building.

¶ 36     We review the sufficiency of the evidence de novo to determine whether the evidence, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a rational fact finder that the defendant is guilty beyond a reasonable doubt. *Jompp*, ¶ 36. We give the prosecution the benefit of every reasonable inference that can fairly be drawn from the evidence. *Id.* When interpreting statutes, our primary purpose is to ascertain and give effect to the legislature's intent. *People v. Neustel*, 2023 COA 56, ¶ 6. To do so, we look first to the statute's plain language, giving words and phrases their ordinary meanings and construing them according to the rules of grammar and common usage. *Id.*

¶ 37     We have already concluded that a storage unit is a "building," as defined by section 18-4-101(1). Indeed, it is specifically designed

for the "shelter of . . . property," and its very purpose is "to contain." *Id.*

¶ 38 Kelly argues otherwise, relying on cases discussing buildings as large standalone structures or including several units within a larger structure. He further argues the storage unit was not a building because it was not fit to shelter humans or animals. But section 18-4-101(1)'s plain language does not require a building to be standalone or to contain multiple units if it "has the capacity to contain" and is designed to shelter property. And because the storage unit in this case was designed to shelter property, it need not be fit to shelter humans or animals. *See People v. Pellegrin*, 2021 COA 118, ¶ 69 (use of the word "or" in a statute is presumed to be in the disjunctive sense), *aff'd*, 2023 CO 37.

¶ 39 We therefore reject Kelly's arguments and conclude the evidence was sufficient to support his second degree burglary conviction.

## VI.   Disposition

¶ 40 The judgment is affirmed.

JUDGE SULLIVAN and JUDGE MEIRINK concur.

14